## DORA K. SILVERSTEIN, ADMINISTRATRIX
*vs.*
## D. O. HAMMERBERG, MILK ADMINISTRATOR

Superior Court        Hartford County        File No. 71634

MEMORANDUM FILED MARCH 27, 1945.

*Charles Stroh,* of Hartford, for the Plaintiff.

*Francis A. Pallotti, Attorney General; T. J. Conroy, Assistant Attorney General;* and *Bernard A. Kosicki, Assistant Attorney General,* for the Defendant.

INGLIS, J.  This is an appeal from a ruling of the Milk Administrator revoking the milk dealer's license of the plaintiff, doing business as People's Dairy Company.

The ruling was based upon a finding by the Administrator, first, that during the period from October 1, 1941, to October 1, 1943, the plaintiff had paid one producer, A. H. Griswold, and during the period from April 1, 1942, to October 1, 1943, the plaintiff had paid another producer, Thomas J. Leonard, prices for milk which were less than the legal minimum prices; and, second, that the plaintiff during those periods had induced those producers respectively to sign receipts for payments in excess of the payments acually received.  The principal contention of the plaintiff on this appeal is that the evidence before the Administrator did not warrant either of those findings.

The findings of the Administrator are conclusive if they are supported by "substantial evidence." (Supp. [1941] §343f, cl.

[f].)   The only question here, therefore, is as to whether there was substantial evidence to support those findings.

As regards the finding of underpayment, the testimony of each of the producers named was that they had been paid during most of the periods at the rate of seven and one-half cents per quart.   The minimum price fixed by the Regulations of the Administrator for the area in question for most of the period was four dollars and thirteen cents per hundredweight, subject to some adjustments on account of butter fat content, and on account of cartage and other minor factors.   The adjustments called for in this case outside of that on account of butter fat content would bring the minimum price to be paid by the plaintiff to these producers down to three dollars and eighty-six cents per hundredweight.   Forty quarts of milk weigh eighty-six pounds.   Accordingly, one quart of milk is .0215 of a hundredweight.   By transposing the minimum price per hundredweight into the minimum price per quart, it appears that the latter price for these producers was eight and three-tenths cents.   It appears, therefore, on the testimony of the producers that they were underpaid at the rate of eight-tenths of a cent per quart.

In addition to that, there was the testimony of the accountant who had checked over the plaintiff's own records.   His evidence was that for the periods in question Mr. Griswold had been underpaid in the amount of $1,683.37, and Mr. Leonard had been underpaid in the amount of $893.70.   It is true that in computing these amounts the accountant had made adjustments for butter fat content and that such butter fat content had been determined by testing methods which are now determined to have been not in accordance with law.   The accountant's schedules which were in evidence, however, show that in practically every instance he adjusted the minimum price downward on account of butter fat content and not upward.   If, therefore, the element of butter fat content had not been taken into consideration by him (as it should not have been because of the lack of adequate tests) the minimum price from which he should have worked would have been higher than that with which he did work.   The result of this, of course, would have been that the underpayment to these producers would have been greater than that which he reported.

The chief contention of the plaintiff on this point is, however, that when milk is sold by the quart in forty-quart cans, as this

milk was sold, it is impossible to determine how much, measured in hundredweights, any given number of quarts amounts to. It is not disputed that one quart is equal to .0215 hundredweight, but it is claimed that a forty-quart can even when full will not yield forty full quarts of milk, because the dents in the can and spilling and leakage always reduce the amount of milk in the can below the forty quarts. It is true that there was testimony of an expert to that effect before the Administrator. However, the Administrator was entitled to disbelieve that testimony, if he saw fit, or he was entitled to believe that such a condition would not materially alter the amount of milk delivered by these producers or the amount of the discrepancy between the minimum price and the price paid to these producers. Moreover, the accountant's figures showing such a discrepancy were based on the plaintiff's own records as to the number of quarts actually received by her.

Accordingly, it is concluded that there was ample evidence to justify the finding of the Administrator that the plaintiff had paid two producers less than the minimum price.

As regards the other finding criticised, which was to the effect that receipts had been induced from the producers for amounts in excess of the amounts actually paid, there is substantial testimony to support that finding both in the testimony of the two producers and in the testimony of the accountant. For that reason the finding must stand. Such a practice clearly violates article IVA of the Regulations.

There is no question but that the findings of the Administrator warranted a revocation of the plaintiff's licence as ruled by him.

Judgment may enter denying the appeal and affirming the ruling of the Administrator.